# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NORTH AMERICAN SPECIALTY<br>INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>      v.<br><br>BRITT PAULK INSURANCE AGENCY,<br>INCORPORATED, a foreign corporation,<br>and ARGENIA, INC., a foreign corporation,<br><br>      Defendants,<br><br>      and<br><br>ARGENIA, INC., a foreign corporation, and<br>BRITT PAULK INSURANCE AGENCY, a<br>foreign corporation,<br><br>      Defendants / Third Party Plaintiffs,<br><br>      v.<br><br>REBSMEN, INSURANCE, INC., d/b/a<br>CROCKETT ADJUSTMENT, a foreign<br>corporation,<br><br>      Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-CV-215-JHP |

## ORDER

Now before the Court is the Defendants' Argenia, Inc.'s and Britt Paulk Insurance Agency's

("Defendants"), Motion to Exclude or Limit the Testimony of Plaintiff's Expert, Michael Atkinson

(Dkt.# 114),  the Plaintiff's North American Specialty Insurance's ("NAS") Response to said

motion, and Defendants' Joint Reply. The Plaintiff has brought this diversity of citizenship civil action alleging breach of contract, negligence, contribution and indemnification arising from the settlement of its former insured's Jerry and Nikki McDonald ("McDonalds") insurance bad faith claim. In this action, NAS claims that the actions and omissions by its general agent, Britt Paulk, and limited agent, Argenia, were the direct cause of NAS having to settle the McDonald's bad faith claim. Defendants wish to exclude Michael Atkinson's ("Atkinson") testimony on the grounds that his opinions do not meet the requirements set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)*. Specifically, NAS contends Atkinson's opinions are unreliable, do not assist the trier of fact, and seek to invade the province of the Court and jury.

"It is now well established that Fed.R.Evid. 702 imposes on a district court a gatekeeper obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)*. This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts. *Id.* at 592-93. The Supreme Court has made clear that "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999)(quoting Daubert, 509 U.S. at 592).*

To be reliable under *Daubert,* an expert's scientific testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." *509 U.S. at 590*. In other words, "an inference or assertion must be derived by the scientific method ... [and] must be supported by appropriate validation – i.e. 'good grounds,' based on what is known." *Id.* While expert opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation, ... absolute certainty is not required." *Gomez v. Martin*

*Marietta Corp., 50 F.3d 1511, 1519 (10ᵗʰ Cir. 1995)(quotation omitted).* "The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community." *Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10ᵗʰ Cir. 1999).* Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements. *Id.*

To assist in the assessment of reliability, the Supreme Court has listed four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *Daubert, 509 U.S. at 593-94.* As noted, the list is not exclusive, and district courts applying Daubert have broad discretion to consider a variety of other factors. *Kuhmo Tire, 526 U.S. at 150.* ("[W]e can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in Daubert ... Too much depends upon the particular circumstances of the particular case at issue.").

Generally, the district court should focus on an expert's methodology rather than the conclusions it generates. *Daubert,509 U.S. at 595.* However, an expert's conclusions are not immune from scrutiny: "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert.").* Under *Dauber*t, "any step that renders the analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell, 165 F.3d at 782 (quoting In re Paoli RR. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994).* It is critical that the district court determine "whether the evidence is

genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist."

*Id*. at 783 *(quoting Rosen v. Ciba-Geigy Corp., 78 F.3d 316, 318 (7th Cir. 1996)*. Regardless of the specific factors at issue, the purpose of the *Daubert* inquiry is always "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Khumo Tire, 526 U.S. at 152.*

This Court has reviewed the Written Report of Expert Testimony prepared by Michael Atkinson in detail and concludes his testimony may not be admitted during the trial of this matter. In Atkinson's Report, he opines that Michael Alexander of Argenia and Curtis Barham of the Britt Paulk Agency made "false, misleading and reckless statements about coverage" without any authority from NAS. Defendants' Motion to Exclude (Dkt.# 114), Ex. 1 at 3. He further states Mr. Alexander and Mr. Barham failed to inform NAS that the McDonalds were trying to pursue their property damage and lost income claims. *Id.* Atkinson expresses his personal opinion that he would not have taken this case to trial if he could have settled it for $1.2 million and concludes the agents' "false statements about coverage to insureds whose economic lives are in the balance are a bad beginning and invariably lead to a bad end." *Id*. Atkinson's report reflects his ultimate opinion the settlement paid to the McDonalds by NAS was "entirely reasonable under the circumstances." *Id.* The Court, however, and not an expert witness, is responsible for instructing the jury on the law of the case and the jury is responsible for applying the facts to the law:

> Our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury. *Askanase v. Fatjo, 130 F.3d 657, 673 (5th Cir. 1997)(citing with approval, Specht v. Jensen, 853 F.2d 805 (10th Cir. 1988), cert denied, 488 U.S. 1008 (1989))*. '[I]f an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position. Such differing opinions as to what the law is would only confuse the jury.' *Id*."

*Crow v. United Benefit Life Insurance Co., 2001 WL 285231, *2 (N.D. Tex. 2001)*. These opinions "impermissibly intrude[] upon the court's duty to instruct the jury as to the appropriate law." *Id.*

Atkinson's opinions also impermissibly invade the province of the jury. Atkinson's opinions NAS' agents gave false, misleading and reckless statements about coverage without authority from NAS must be rejected as they go directly to the negligence and breach of contract claims asserted by NAS against its agents. Further, Atkinson's conclusion the settlement by NAS was reasonable in light of the facts assumes NAS' analysis of the risk was correct based on Atkinson's own interpretation of the contracts involved and his assessment of NAS' coverage and exposure. These facts were never decided by a jury, but rather ultimately determined by NAS when it chose to settle the case with the McDonalds. It is not proper for Atkinson to assess the evidence and then instruct the jury as to the result to be reached. Whether Defendants' conduct does or does not amount to negligence or breach of contract is for the jury to decide. *Id. at \*3.*

Moreover, Atkinson's opinion fails to assist the trier of fact. *See Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 648 (10th Cir. 1991)(under Fed.R.Civ.P. 702 the touchstone of admissibility is helpfulness to the trier of fact).* The jury in this case, equipped with appropriate instructions, will be perfectly capable of assessing Defendants' conduct for the purpose of determining whether or not Defendants were negligent or breached their respective contracts with NAS. As noted by the Tenth Circuit, "where as here expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally 'assist the trier of fact,' while it must be viewed as a 'needless presentation' (Fed.R.Evid. 403) . . ." *Thompson v. State Farm Fire and Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994)(in excluding testimony of bad faith expert on the issues of bad faith denial and investigation of insurance claims the Court concluded the jury was perfectly capable of assessing such issues).* "Although any witness may offer an opinion as to an ultimate issue to be decided by a jury, this opinion should not unduly invade the province of the jury when the assistance of the witness is unnecessary." *Sims v. Great American Life Ins. Co., 469 F.3d 870, 889 (10th Cir. 2006); United States v. Dazey, 403 F.3d 1147, 1172 (10th Cir. 2005).* "Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of

evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . ." *Sims, 469 F.3d at 889, citing Fed.R.Evid. 704 advisory committee's notes.*

Therefore, the Court concludes the testimony offered by NAS in the form of Atkinson's opinion is not relevant in that it fails to assist the trier of fact in understanding and determining any fact in issue and it further impermissibly invades the Court's role in instructing the jury as to the applicable law and the jury's role in applying that law to the facts at hand.[1] As a result, Atkinson's testimony fails to meet the test for admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence and the standards set forth by the United States Supreme Court in *Daubert* and *Kuhmo.*[2]

Accordingly, Defendants' Motion to Exclude the Testimony of Plaintiff's Expert, Michael Atkinson (Dkt.#114) is granted.

**IT IS SO ORDERED this 10th day of September, 2007.**

James H. Payne
United States District Judge
Eastern District of Oklahoma

---

[1]1. Having excluded Atkinson's testimony on these grounds, the Court finds it unnecessary to address Defendants' other grounds for exclusion that Atkinson's opinions are outside his area of expertise and are based on unreliable and unsupported assumptions.

[2]2. This ruling is not intended as a blanket prohibition on the use of experts in insurance litigation. The Court can envision the utility of expert testimony under circumstances where the technical or highly specialized aspects of insurance industry practices are at issue. The facts of this case, however, do not fall within that classification.