IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 06-CV-215-JHP |
| BRITT PAULK INSURANCE AGENCY, INCORPORATED, a foreign corporation, and ARGENIA, INC., a foreign corporation, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| ARGENIA, INC., a foreign corporation, and BRITT PAULK INSURANCE AGENCY, a foreign corporation, | ) ) ) ) | |
| Defendants / Third Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| REBSMEN, INSURANCE, INC., d/b/a CROCKETT ADJUSTMENT, a foreign corporation, | ) ) ) ) | |
| Third-Party Defendant. | ) | |

# **ORDER**

Now before the Court is Plaintiff's, North American Specialty Insurance Company's ("NAS"), Motion for Partial Summary Judgment (Dkt.# 79), on the issue of breach of

1

contract, Defendants' Britt Paulk Insurance Agency, Incorporated's ("Paulk") and Argenia, Inc.'s ("Argenia"), Responses to said motion, as well as NAS' Combined Reply.

In general, summary judgment is proper where the pleadings depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).* An issue is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. Id. at 249.

In considering a motion for summary judgment, this court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir. 1988).* Furthermore, if on any part of the prima facie case there is insufficient evidence to require submission of the case to the jury, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).* In addition, one of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex* Corp. v. Catrett, 477 U.S. 317,323-24 (1986).

**BACKGROUND**

NAS issued an insurance policy to Jerry and Nikki McDonald ("the McDonalds"), providing property damage coverage on two poultry houses and lost business income. In November 2003, the McDonalds noticed their poultry houses were leaning. According to the McDonalds, the poultry houses were damaged from high explosive blasting associated with mining operations on, or near their home. The loss was reported to the insureds' local agent, Jerry Pitchford ("Pitchford"), in November of that year. Pitchford told the McDonalds that is was his "personal opinion" that the property damage related to blasting was not covered under NAS' policy. He also told the McDonalds, however, that he did not have authority to deny the McDonald's claim. Pitchford prepared a loss notice on behalf of the McDonalds on January 7, 2004.

On or about January 8, 2004, NAS received notice of a potential claim from the McDonalds. On January 9, 2004, NAS opened an insurance claim file and contacted independent adjustor Bill Haneline ("Haneline") from Crockett Adjustment Inc.("Crockett"), to look into the matter. On January 12, 2004, the McDonalds executed a Reservation of Rights and Non-Waiver Agreement ("Reservation of Rights").

NAS subsequently closed its file after Haneline reported on January 14, 2004, that the McDonalds were not pursuing any type of claim from their policy. In Haneline's final report completed on January 30, 2004, he again stated that the McDonalds did not want to submit a loss claim.

NAS was later sued by the McDonalds for breach of contract and bad faith in March of 2005, tendered its policy limits check to the McDonalds, and settled the bad faith portion

of their claim for 1.2 million dollars.

In the instant motion, NAS requests the Court grant it partial summary judgment on its breach of contract claims. NAS seeks damages from its agents Paulk and Argenia. Paulk was general agent for NAS' poultry program, and Argenia was the retail producer/agent for NAS relative to the policy covering the McDonald's poultry houses. Argenia offered insurance coverage under the NAS poultry program in Oklahoma through Oklahoma Farm Bureau. Curtis Barnham ("Barnham"), was poultry Program Manager for Paulk and Michael Alexander, Jr. ("Alexander"), was involved in an underwriting function for Argenia.

According to NAS, the McDonalds contacted Alexander on or about February 6, 2004, and had a conversation lasting approximately 43 minutes. NAS contends Alexander advised the McDonalds he did not believe there was coverage. Alexander then spoke to Barnham at Britt Paulk and Barnham advised him blasting was not a covered peril. Barnham did not tell Alexander this opinion should be withheld from the McDonalds.

Affidavit testimony of Jerry McDonald reflects that Mr. McDonald "was attempting to obtain benefits under [his] insurance policy during this February 6, 2004, telephone call." NAS Combined Reply Br., Ex. A. The affidavit of Mr. McDonald also states that it was after the February 6, 2004, telephone conversation with Alexander that he "concluded that the damage to the poultry houses was not covered." *Id.*

Conversely, both Paulk and Argenia argue that these opinions did not constitute a denial of the McDonalds' claim, and further, NAS had a separate and independent duty to investigate and either grant, or deny the McDonalds' claim. Defendants also argue that it

was completely unforeseeable that NAS would receive a written claim from an insured, file it, and do nothing. Therefore, Defendants contend that even if their opinions constituted a breach of their respective contracts, which the deny, their opinions became moot when the McDonalds actually submitted a formal loss on January 7, 2004. "[W]hen NAS received the claim it engaged Mr. Haneline. Mr. Haneline reported back, following his contact with the McDonalds, that they did not desire to pursue a claim under their policy. No one on behalf of NAS documented the "no claim" position of the McDonalds." Response Br. At 12.

## **DISCUSSION**

NAS seeks partial summary judgment on the issue of whether, pursuant to the contracts between Argenia and Paulk, these agents were prohibited from approving or denying claims. Specifically, NAS argues that as a direct result of Argenia and Paulk's decisions to inform the McDonalds that the damage to their poultry houses was not covered, NAS sustained significant damages. NAS contends that Argenia and Paulk led the McDonalds to believe NAS had investigated their claim and determined there was no coverage. NAS concludes that without these insurance benefits, the McDonalds suffered grievous economic and emotional distress damages, which led them to bring a civil lawsuit against NAS that was ultimately settled.

> The General Agency Agreement between NAS and Paulk provided in pertinent part:
>
> Except as otherwise be authorized in an Addendum to this Agreement, the General Agent [Britt / Paulk] shall have no authority to investigate, defend, approve, or deny any claim made against the Company [NAS] or

an insurance company represented by the Company or under any
policy issued pursuant to this Agreement and the General Agent
shall have no authority to assign an adjuster or attorney to investigate
or defend any claims.

NAS, through Paulk, had also entered into a Limited Agency Agreement with Argenia. According to this Agreement, Argenia was "authorized . . .only to countersign [] [NAS'] insurance policies, and provided that Argenia "shall have no authority to admit liability on the part of [][NAS].

In Oklahoma, unambiguous insurance contracts are construed, as are other contracts, according to their terms. The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law. Insurance contracts are ambiguous only if they are susceptible to two constructions. In interpreting an insurance contract, this Court will not make a better contract by altering a term for a party's benefit. *National American Ins. Co. V. American Re-Insurance Co., 358 F.3d 736, 740 (10th Cir. 2004) citing Max True Plastering Co. v. U.S. Fidelity & Guar. Co., 912 P.2d 861, 869 (Okla. 1996).*

"However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." *Dillon Family & Youth Services, Inc. V. Dept. of Human Services, 965 F.2d 932, 935 (1992).* In so interpreting a contract, the court should not ascribe a forced or strained meaning to a term or provision. *Pitco Production v. Chaparral Energy, Inc., 63 P.3d 541 (Okla. 2003).* No provision should be taken out of context and narrowly focused upon to create an ambiguity that the ambiguity may then be exploited in favor of one party to the contract. Id.

Pursuant to the above principles, NAS argues the contracts precluded Argenia and Paulk from discussing coverage issues with any NAS insured and from investigating, approving, denying, or adjusting claims on behalf of NAS. Defendants argue they never engaged in any act prohibited by their respective contracts. But, even if they had, there is no causal connection between the asserted breach of contract and the damages claimed by NAS.

Defendants contend the only person with authority to decide whether a claim would be paid was NAS. Defendants argue that regardless of the statements made by Paulk or Argenia, the fact remains that NAS sent out an adjustor to talk to the McDonalds concerning their written claim and then did nothing further. It is Defendants' position that either NAS did nothing further because, as reported by Crockett's adjustor Haneline, the McDonalds did not wish to make a claim, or because they merely did not follow through on the McDonald's claim. If the McDonald's truly did not wish to make a claim, then the question of whether or not there was coverage is academic. If, on the other hand, the McDonalds did wish to make a claim, it was negligent of NAS and Crockett to fail to investigate and promptly pay. In any event, Paulk and Argenia argue they had nothing to do with NAS' decision to close its file after Haneline's visit to the McDonalds.

Further, Defendants argue their opinions had no effect on the insureds because it did not stop them from filing a claim, and NAS was aware Barnham had expressed his opinion about coverage because it was noted in the claim file. Additionally, Defendants state NAS representatives themselves expressed coverage concerns and told their independent adjustor, Crockett, of NAS' concerns.

The Court finds there remain questions of fact in regard to both breach of contract claims. Paulk and Argenia have controverted NAS' allegations concerning whether statements were given to the McDonalds which would have qualified as being precluded under the contracts, whether such statements were the proximate cause of NAS' damages, and whether NAS suffered any damages attributable to the alleged breach. Accordingly, NAS' Partial Motion for Summary Judgment (Dkt.# 79) is denied.

**IT IS SO ORDERED this 10th day of September, 2007.**

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma