IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

NORTH AMERICAN SPECIALTY )
INSURANCE COMPANY, )
 )
 )
    Plaintiff, )
 )
    v. ) No. 06-CV-215-JHP
 )
BRITT PAULK INSURANCE AGENCY, )
INCORPORATED, a foreign corporation, )
and ARGENIA, INC., a foreign corporation, )
 )
 )
    Defendants, )
 )
    and )
 )
ARGENIA, INC., a foreign corporation, and )
BRITT PAULK INSURANCE AGENCY, a )
foreign corporation, )
 )
    Defendants / Third Party Plaintiffs, )
 )
    v. )
 )
REBSAMEN, INSURANCE, INC., d/b/a )
CROCKETT ADJUSTMENT, a foreign )
corporation, )
 )
    Third-Party Defendant. )

# ORDER

Now before the Court is Defendant/Third Party Plaintiff, Argenia, Inc.'s ("Argenia"),

Motion for Summary Judgment (Dkt.# 84), Plaintiff's, North American Specialty Insurance

1

Company's ("NAS"), Response to said motion, and Argenia's Reply.

In general, summary judgment is proper where the pleadings depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).* An issue is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. Id. at 249.

In considering a motion for summary judgment, this court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir. 1988).* Furthermore, if on any part of the prima facie case there is insufficient evidence to require submission of the case to the jury, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).* In addition, one of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex* Corp. v. Catrett, 477 U.S. 317,323-24 (1986).

**BACKGROUND**

NAS issued an insurance policy to Jerry and Nikki McDonald ("the McDonalds"), providing property damage coverage on two poultry houses and lost business income. In

November 2003, the McDonalds noticed their poultry houses were leaning. According to the McDonalds, the poultry houses were damaged from high explosive blasting associated with mining operations on, or near their home. The loss was reported to the insureds' local agent, Jerry Pitchford ("Pitchford"), in November of that year. Pitchford told the McDonalds that it was his "personal opinion" that the property damage related to blasting was not covered under NAS' policy. He also alleges he told the McDonalds that he did not have authority to deny the McDonald's claim. Pitchford prepared a loss notice on behalf of the McDonalds on January 7, 2004.

On or about January 8, 2004, NAS received notice of a potential claim from the McDonalds. On January 9, 2004, NAS opened an insurance claim file and contacted independent adjustor Bill Haneline ("Haneline") from Crockett Adjustment Inc.("Crockett"), to look into the matter. On January 12, 2004, the McDonalds executed a Reservation of Rights and Non-Waiver Agreement ("Reservation of Rights").

NAS subsequently closed its file after Haneline reported on January 14, 2004, that the McDonalds were not pursuing any type of claim from their policy. In Haneline's final report completed on January 30, 2004, he again stated that the McDonalds did not want to submit a loss claim.

NAS was later sued by the McDonalds for breach of contract and bad faith in March of 2005, tendered its policy limits check to the McDonalds, and settled the bad faith portion of their claim for 1.2 million dollars.

In the instant action, NAS seeks damages from its agents Paulk and Argenia, Inc.

("Argenia"). Paulk was general agent for NAS' poultry program, and Argenia was the retail producer/agent for NAS relative to the policy covering the McDonald's poultry houses. Argenia offered insurance coverage under the NAS poultry program in Oklahoma through Oklahoma Farm Bureau. Curtis Barnham ("Barnham"), was poultry Program Manager for Paulk and Michael Alexander, Jr. ("Alexander"), was involved in an underwriting function for Argenia.

According to NAS, the McDonalds contacted Alexander on or about February 6, 2004, and had a conversation lasting approximately 43 minutes. NAS contends Alexander advised the McDonalds he did not believe there was coverage. According to NAS, Barnham had advised Alexander in November 2003 that in his opinion damage to the poultry houses from blasting was not covered under McDonald's policy. Barnham did not tell Alexander this opinion should be withheld from the McDonalds, and NAS alleges Alexander told the McDonalds that Barnham believed there was no coverage. It is also alleged that during this conversation, the McDonalds asked if it were possible for NAS to pay their claim and then "go after" the mining company. NAS contends Alexander advised the McDonalds during this conversation that this was not something insurance companies do.

Affidavit testimony of Jerry McDonald reflects that Mr. McDonald "was attempting to obtain benefits under [his] insurance policy during this February 6, 2004, telephone call." NAS Response Br., Ex. R. The affidavit of Mr. McDonald also states that it was after the February 6, 2004, telephone conversation with Alexander that he "concluded that the damage to the poultry houses was not covered." *Id.*

4

NAS argues it had no notice that its insureds were attempting to have their claim re-opened through Alexander until it received the complaint and summons in the McDonalds' bad faith case in March 2005. Upon receipt of the McDonalds' Complaint, NAS reopened the McDonalds' insurance claim and determined the loss was covered under the policy. The McDonalds were paid by NAS the limits of their policy and 1.2 million for the bad faith portion of their claim. NAS claims that if Alexander had notified NAS of the attempt by the McDonalds to pursue their claim in the February 6, 2004, telephone conversation, NAS would have re-opened the McDonalds' claim at that point in time thereby preventing the ultimate suit brought by the McDonalds for breach of contract and bad faith.

Conversely, both Paulk and Argenia argue that these opinions did not constitute a denial of the McDonalds' claim, and further, NAS had a separate and independent duty to investigate and either grant, or deny the McDonalds' claim. Defendants also argue that it was completely unforeseeable that NAS would receive a written claim from an insured, file it, and do nothing. Therefore, Defendants contend that even if their opinions constituted a breach of their respective contracts, which they deny, their opinions became moot when the McDonalds actually submitted a formal loss on January 7, 2004.

**DISCUSSION**

Argenia seeks summary judgment on all issues. Argenia contends the sole factual basis for the claims against it arise from the conversations Alexander had with Barnham and the McDonalds. NAS argues, however, that as a direct result of Argenia and Paulk's

decisions to inform the McDonalds that the damage to their poultry houses was not covered, NAS sustained significant damages. NAS contends that Argenia and Paulk led the McDonalds to believe NAS had investigated their claim and determined there was no coverage. NAS concludes that without these insurance benefits, the McDonalds suffered grievous economic and emotional distress damages, which led them to bring a civil lawsuit against NAS that was ultimately settled.

In regard to the breach of contract claim, the General Agency Agreement between NAS and Paulk provided in pertinent part:

> Except as otherwise be authorized in an Addendum to this Agreement, the General Agent [Britt / Paulk] shall have no authority to investigate, defend, approve, or deny any claim made against the Company [NAS] or an insurance company represented by the Company or under any policy issued pursuant to this Agreement and the General Agent shall have no authority to assign an adjuster or attorney to investigate or defend any claims.

NAS, through Paulk, had also entered into a Limited Agency Agreement with Argenia. According to this Agreement, Argenia was "authorized . . .only to countersign [] [NAS'] insurance policies, and provided that Argenia "shall have no authority to admit liability on the part of [][NAS]. Further, NAS argues Argenia had a duty to "promptly notify the Company when the Agent receives notice of the commencement of any such action . . ." Argenia's Motion for Summary Judgment (Dkt.# 84), Ex. 1.

Pursuant to the above principles, NAS argues the contracts precluded Argenia and Paulk from discussing coverage issues with any NAS insured and from investigating, approving, denying, or adjusting claims on behalf of NAS. Defendants argue they never

engaged in any act prohibited by their respective contracts. But, even if they had, there is no causal connection between the asserted breach of contract and the damages claimed by NAS.

Defendants contend the only person with authority to decide whether a claim would be paid was NAS. Defendants argue that regardless of the statements made by Paulk or Argenia, the fact remains that NAS sent out an adjustor to talk to the McDonalds concerning their written claim and then did nothing further. It is Defendants' position that either NAS did nothing further because, as reported by Crockett's adjustor Haneline, the McDonalds did not wish to make a claim, or because they merely did not follow through on the McDonald's claim. If the McDonald's truly did not wish to make a claim, then the question of whether or not there was coverage is academic. If, on the other hand, the McDonalds did wish to make a claim, it was negligent of NAS and Crockett to fail to investigate and promptly pay. In any event, Paulk and Argenia argue they had nothing to do with NAS' decision to close its file after Haneline's visit to the McDonalds.

Further, Defendants argue their opinions had no effect on the insureds because it did not stop them from filing a claim, and NAS was aware Barnham had expressed his opinion about coverage because it was noted in the claim file. Additionally, Defendants state NAS representatives themselves expressed coverage concerns and told their independent adjustor, Crockett, of NAS' concerns.

The Court finds there remain questions of fact regarding the breach of contract claim. NAS has controverted Argenia's allegations concerning whether statements were made to the McDonalds which would have qualified as being precluded under the contract, whether

7

such statements were the proximate cause of NAS' damages, and whether NAS suffered any damages attributable to the alleged breach. Additionally, NAS has disputed Argenia's contention that it complied with the notice provision of the contract.

Argenia further argues NAS cannot assert a negligence cause of action because Argenia cannot be liable for bad faith, or the payment of extracontractual damages. The Court finds, however, NAS is entitled to assert a negligence cause of action against Argenia. *See St. Paul Reinsurance Co., Ltd. v. Club Services Corp., 30 Fed. Appx. 834, 836 (10th Cir. (Okla.)(2002).* Contrary to Argenia's assertions, NAS' claim does not sound in bad faith, but rather simple negligence. The Tenth Circuit has held that an insurer can recover in negligence from the agent for amounts that it paid to settle the insured's bad faith claim. In such a case, the insurer must prove the agent was responsible for the insured's bad faith claim. *Id.* "An agent in the discharge of his duties as such must exercise ordinary care, and for negligence in failing to do so he will be liable to his principal." *Id.*

Argenia contends the payment by NAS to the McDonalds was not caused by the acts or omissions of Argenia. In this regard the Court notes there remain questions of fact in regard to the causation element of the negligence cause of action. NAS has raised questions of fact concerning whether the statements made by Alexander were the relied upon by the McDonalds. Therefore, there is a jury question as to whether Argenia's comments could have caused the alleged negligence, if any, which may have occurred. Of course, this is highly disputed, Argenia arguing either Barnham's, Haneline's and/or NAS' actions or inactions, were intervening and superceding proximate causes of any negligence which may

have occurred. NAS also contends Argenia had a duty to inform NAS of Alexander's discussions with the McDonalds, and the McDonalds continued persistence in making a claim during the February 6, 2004 conversation.

Argenia next asserts it is entitled to summary judgment on NAS' equitable and statutory claims of contribution and indemnification. The Court finds the equitable contribution claim is without merit. The Oklahoma Supreme Court has described equitable contribution as "the right to recover, not from a party primarily liable for the loss, but from a co-obligor or co-insurer who shares common liability with the party seeking contribution." *Meadows v. Century Healthcare, Inc.*, 445 F.Supp2d 1297, 1316 (N.D. Okla. 2006) *citing Niemeyer v. United States Fidelity & Guaranty Co.*, 789 P.2d 1318, 1322 (Okla. 1990). Since there is no evidence to suggest that Argenia and NAS provided equivalent levels of coverage for the same loss, NAS' claim for equitable contribution is denied.[1] The Court finds that even if equitable contribution were the law, it clearly does not apply to the facts of this case.

The claim for statutory contribution, however, is a viable cause of action. Okla. Stat. tit. 12, §832(A) provides:

> When two or more persons become jointly or severally
> liable in tort for the same injury to person or property
> or for the same wrongful death, there is a right of
> contribution among them even though judgment has
> not been recovered against all or any of them except

---

[1] The Oklahoma Court of Civil Appeals has questioned whether the Oklahoma Supreme Court intended to adopt the theory of equitable contribution as the law in Oklahoma. *United Services Auto. Ass'n v. State Farm Fire & Cas. Co.*, 110 P.3d 570 (Okla. Civ.App. 2004).

as provided in this section.

Argenia contends NAS owed the McDonalds a non-delegable duty under the insurance contract, and therefore Argenia cannot be liable for bad faith extracontractual damages. NAS acknowledges Argenia was not a signatory on the contract, however, NAS argues that does not mean Argenia is insulated from tort liability.

The Court finds that although NAS' allegations against Argenia are based on negligence, not insurance bad faith, Section 832 does not require the party seeking contribution to be liable under the same legal theory as the party from whom they are seeking contribution. According to Section 832, an action for contribution lies "[w]hen two or more persons become jointly or severally liable **in tort** for the same injury to person or property..." (emphasis added). In In re Jones, 804 F.2d 1133, 1142 (10th Cir. 1986), the Court held that Oklahoma's contribution statute does not require that mulitple tortfeasors be liable under the same legal theory. In so stating, the Court noted:

> Section 832(H) itself does not require that the parties act in concert in order to be liable as multiple tortfeasors. Section 832(H) merely requires that the multiple tortfeasors cause or contribute to the same injury sustained by the plaintiff.

Accordingly, there remains a question of fact concerning the amount of liability, if any, the jury may assign Argenia on NAS' negligence cause of action.

In regard to NAS' claims for contractual indemnity, the Court finds, contrary to the assertions of NAS, the Indemnification clause in the Limited Agency Agreement for Countersignature between NAS and Argenia does not entitle NAS to indemnification. Rather

10

the provision set forth in Paragraph 4 states that "The Company agrees to indemnify, . . . the Agent..." Argenia's Motion for Summary Judgment, Ex. 1. Further, the provision cited in the Agent Appointment Letter, likewise does not apply to the factual and procedural posture of the instant case. *Id.*, Ex. 1.1.

The equitable claim for indemnity, however, is a valid basis for recovery. Under Oklahoma law, indemnity may arise out of an express contractual provision. Okla. Stat.Ann.tit. 15, §421(stating that "[i]ndemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."). Alternatively, "'[n]oncontractual indemnity or equitable indemnity'" may arise from a legal relationship between the parties. *Woolard v. JLG Industries, Inc., 210 F.3d 1158, (Okla. 2000) citing National Union Fire Ins. Co. v. A.A.R. W. Skyways, Inc., 784 P.2d 52, 54 (Okla. 1989).* Here an agency relationship is alleged to have been in place, and NAS alleges it paid damages for harm caused by Argenia's breach. These allegations are sufficient to survive summary judgment at this stage in the proceedings. *See Falcon Belting, Inc. v. RTP Co., 232 F.3d 901 (10th 2000).*

Argenia also emphasizes the same argument it raised in relation to the contribution claim, that Argenia cannot be required to indemnify NAS for bad faith damages because there was no privity of contract, i.e., Argenia was not a party to the contract between NAS and the McDonalds. The Court finds this argument without merit. In *In re Cooper Manufacturing Corp. v. Home Indemnity Co., 182 F.3d 931 (10th Cir. 1999)* the Tenth Circuit Court of Appeals addressed a similar argument. The district court had found that an insurance

company could not seek indemnity against its agent "because it could not prove the agent was directly liable to the [plaintiffs] in the underlying case, i.e., the insurance company "could not delegate its duties of good faith and fair dealing." *Id.* The insurance company argued the district court had construed the law of indemnity too narrowly. The Tenth Circuit agreed and held that proof of the agent's "active fault resulting in the insurer's liability to the plaintiff insured," may entitle the insurer to indemnity. *Id*. Where, as here, an insured must prove an agent's acts directly caused its liability to its insured, where active fault on the part of the agent is required, an indemnity action may lie. *Id.*

Accordingly, Argenia's Motion for Summary Judgment (Dkt.# 84) is granted in part and denied in part.

**IT IS SO ORDERED this 14th day of September, 2007.**

James H. Payne
United States District Judge
Eastern District of Oklahoma