IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

NORTH AMERICAN SPECIALTY )
INSURANCE COMPANY, )
 )
 )
    Plaintiff, )
 )
    v. ) No. 06-CV-215-JHP
 )
BRITT PAULK INSURANCE AGENCY, )
INCORPORATED, a foreign corporation, )
and ARGENIA, INC., a foreign corporation, )
 )
 )
    Defendants, )
 )
    and )
 )
ARGENIA, INC., a foreign corporation, and )
BRITT PAULK INSURANCE AGENCY, a )
foreign corporation, )
 )
    Defendants / Third Party Plaintiffs, )
 )
    v. )
 )
REBSAMEN, INSURANCE, INC., d/b/a )
CROCKETT ADJUSTMENT, a foreign )
corporation, )
 )
    Third-Party Defendant. )

# **ORDER**

Now before the Court is Third Party Defendant, Rebsamen Insurance, Inc., d/b/a

Crockett Adjustment, a foreign corporation's ("Crockett"), Motion for Summary Judgment

1

(Dkt.# 82), Defendant/Third Party Plaintiff's, Argenia, Inc.'s ("Argenia"), and Defendant/Third-Party Plaintiff's, Britt Paulk Insurance Agency, Incorporated's ("Paulk") Responses to said motion, and Crockett's Reply.

In general, summary judgment is proper where the pleadings depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).* An issue is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. Id. at 249.

In considering a motion for summary judgment, this court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir. 1988).* Furthermore, if on any part of the prima facie case there is insufficient evidence to require submission of the case to the jury, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).* In addition, one of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex* Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

**BACKGROUND**

NAS issued an insurance policy to Jerry and Nikki McDonald ("the McDonalds"), providing property damage coverage on two poultry houses and lost business income. In November 2003, the McDonalds noticed their poultry houses were leaning. According to the McDonalds, the poultry houses were damaged from high explosive blasting associated with mining operations on, or near their home. The loss was reported to the insureds' local agent, Jerry Pitchford ("Pitchford"), in November of that year. Pitchford told the McDonalds that it was his "personal opinion" that the property damage related to blasting was not covered under NAS' policy. He also alleges he told the McDonalds that he did not have authority to deny the McDonald's claim. Pitchford prepared a loss notice on behalf of the McDonalds on January 7, 2004.

On or about January 8, 2004, NAS received notice of a potential claim from the McDonalds. On January 9, 2004, NAS opened an insurance claim file and contacted independent adjustor Bill Haneline ("Haneline") from Crockett, to look into the matter. On January 12, 2004, the McDonalds executed a Reservation of Rights and Non-Waiver Agreement ("Reservation of Rights").

NAS subsequently closed its file after Haneline reported on January 14, 2004, that the McDonalds were not pursuing any type of claim from their policy. In Haneline's final report completed on January 30, 2004, he again stated that the McDonalds did not want to submit a loss claim.

NAS was later sued by the McDonalds for breach of contract and bad faith in March of 2005, tendered its policy limits check to the McDonalds, and settled the bad faith portion

of their claim for 1.2 million dollars.

In the instant action, NAS seeks damages from its agents Paulk and Argenia. Paulk was general agent for NAS' poultry program, and Argenia was the retail producer/agent for NAS relative to the policy covering the McDonald's poultry houses. Argenia offered insurance coverage under the NAS poultry program in Oklahoma through Oklahoma Farm Bureau. Curtis Barnham ("Barnham"), was poultry Program Manager for Paulk and Michael Alexander, Jr. ("Alexander"), was involved in an underwriting function for Argenia.

According to NAS, the McDonalds contacted Alexander on or about February 6, 2004, and had a conversation lasting approximately 43 minutes. NAS contends Alexander advised the McDonalds he did not believe there was coverage. According to NAS, Barnham had advised Alexander in November 2003 that in his opinion damage to the poultry houses from blasting was not covered under McDonald's policy. Barnham did not tell Alexander this opinion should be withheld from the McDonalds, and NAS alleges Alexander told the McDonalds that Barnham believed there was no coverage. It is also alleged that during this conversation, the McDonalds asked if it were possible for NAS to pay their claim and then "go after" the mining company. NAS contends Alexander advised the McDonalds during this conversation that this was not something insurance companies do.

Affidavit testimony of Jerry McDonald reflects that Mr. McDonald "was attempting to obtain benefits under [his] insurance policy during this February 6, 2004, telephone call." NAS Response Br., Ex. R. The affidavit of Mr. McDonald also states that it was after the February 6, 2004, telephone conversation with Alexander that he "concluded that the damage

4

to the poultry houses was not covered." *Id.*

NAS argues it had no notice that its insureds were attempting to have their claim reopened through Alexander until it received the complaint and summons in the McDonalds' bad faith case in March 2005. Upon receipt of the McDonalds' Complaint, NAS reopened the McDonalds' insurance claim and determined the loss was covered under the policy. The McDonalds were paid by NAS the limits of their policy and 1.2 million for the bad faith portion of their claim. NAS claims that if Alexander had notified NAS of the attempt by the McDonalds to pursue their claim in the February 6, 2004, telephone conversation, NAS would have re-opened the McDonalds' claim at that point in time thereby preventing the ultimate suit brought by the McDonalds for breach of contract and bad faith.

Conversely, both Paulk and Argenia argue that these opinions did not constitute a denial of the McDonalds' claim, and further, NAS had a separate and independent duty to investigate and either grant, or deny the McDonalds' claim. Defendants also argue that it was completely unforeseeable that NAS would receive a written claim from an insured, file it, and do nothing. Therefore, Defendants contend that even if their opinions constituted a breach of their respective contracts, which they deny, their opinions became moot when the McDonalds actually submitted a formal loss on January 7, 2004.

Argenia and Paulk filed Third Party Complaints against Crockett alleging they are entitled to indemnity and contribution. Specifically, they allege it is Crockett's report that NAS relied upon in deciding to close the McDonald's file. Further, they allege it was Crockett's negligent handling and investigation of the McDonald's claim that led NAS to

5

close its file. No other action was taken by NAS after closing its file until the filing of the McDonald lawsuit. Crockett contends, however, it cannot be liable for contribution or indemnification because Crockett owed no contractual, or tort duties to Argenia, or Paulk.

**DISCUSSION**

The Court finds the equitable contribution claim is without merit. The Oklahoma Supreme Court has described equitable contribution as "the right to recover, not from a party primarily liable for the loss, but from a co-obligor or co-insurer who shares common liability with the party seeking contribution."*Meadows v. Century Healthcare, Inc., 445 F.Supp2d 1297, 1316 (N.D. Okla. 2006) citing Niemeyer v. United States Fidelity & Guaranty Co., 789 P.2d 1318, 1322 (Okla. 1990).* Crockett is an independent adjustor. Because there is no evidence to suggest that Crockett provided any type of coverage for the McDonald's loss, Paulk's and Argenia's claims for equitable contribution are denied.[1] The Court finds that even if equitable contribution were the law, it clearly does not apply to the facts of this case.

The claim for statutory contribution, however, is a viable cause of action. Okla. Stat. tit. 12, §832(A) provides:

> When two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them except as provided in this section.

---

[1] The Oklahoma Court of Civil Appeals has questioned whether the Oklahoma Supreme Court intended to adopt the theory of equitable contribution as the law in Oklahoma. *United Services Auto. Ass'n v. State Farm Fire & Cas. Co.,* 110 P.3d 570 (Okla. Civ.App. 2004).

Crockett contends it only owed a duty to NAS, and NAS owed the McDonalds a non-delegable duty under the insurance contract. Therefore, Crockett surmises it cannot be liable for bad faith extracontractual damages. Crockett also argues no tort duty exists between and/or among Crockett, Paulk and Argenia.

Paulk and Argenia seek contribution from Crockett and argue they were not negligent, and it was Crockett who caused NAS' damages. Thus, Paulk and Argenia have not admitted negligence to NAS, but rather, are asserting that if they are held responsible for NAS' claims, they are entitled to contribution form joint tortfeasor, Crockett.

The Court finds that NAS' allegations against Crockett, if asserted, would be based on negligence, not insurance bad faith. NAS' claims against Paulk and Argenia are based on negligence, not insurance bad faith. Paulk and Argenia's claims against Crockett are asserted as claims for contribution. Section 832 neither requires the party seeking contribution to be liable under the same legal theory as the party from whom they are seeking contribution, nor does it require the party seeking contribution to be owed a duty from the party from whom they are seeking contribution. According to Section 832, an action for contribution lies "[w]hen two or more persons become jointly or severally liable **in tort for the same injury to person** or property..." (emphasis added). In In re Jones, 804 F.2d 1133, 1142 (10th Cir. 1986), the Court held that Oklahoma's contribution statute does not require that multiple tortfeasors be liable under the same legal theory. In so stating, the Court noted:

> Section 832(H) itself does not require that the parties act in concert in order to be liable as multiple tortfeasors. Section 832(H) merely requires that the multiple tortfeasors **cause or**

7

**contribute to the same injury sustained by the plaintiff.**

(emphasis added). Therefore, the only requirement is that all tortfeasors must contribute to the same injury sustained by the plaintiff, and must all necessarily owe a duty to the plaintiff.

Accordingly, Paulk and Argenia may assert a statutory contribution claim because all three owed a duty to NAS, and there remain questions of fact concerning the amount of liability, if any, the jury may assign Paulk, Argenia and/or Crockett on NAS' negligence cause of action.

In regard to Paulk's and Argenia's claims for contractual indemnity, Crockett argues there is no contract between these parties. The Court agrees and finds no basis for a contractual indemnity cause of action.

The equitable claim for indemnity, likewise, is not a valid basis for recovery. Under Oklahoma law, indemnity may arise out of an express contractual provision. Okla. Stat.Ann.tit. 15, §421(stating that "[i]ndemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."). Alternatively, "'[n]oncontractual indemnity or equitable indemnity'" may arise from a legal relationship between the parties. *Woolard v. JLG Industries, Inc., 210 F.3d 1158, (Okla. 2000) citing National Union Fire Ins. Co. v. A.A.R. W. Skyways, Inc., 784 P.2d 52, 54 (Okla. 1989).* Here, there is neither a special, nor an agency relationship between Paulk, Argenia, and Crockett. Therefore, there are no allegations sufficient to survive summary judgment in regard to this cause of action. *See Falcon Belting, Inc. v. RTP Co., 232 F.3d 901 (10th 2000).*

Accordingly, Crockett's Motion for Summary Judgment (Dkt.# 82) is granted in part and denied in part.

**IT IS SO ORDERED this 19th day of September, 2007.**

James H. Payne
United States District Judge
Eastern District of Oklahoma